**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **GEORGE M. ROBERTS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 11-CV-040 JHP-PJC** |
| ) | |
| **INTERNATIONAL BUSINESS** ) | |
| **MACHINES CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |

**OPINION AND ORDER**[1]

Before the Court are Defendant International Business Machines Incorporated's (IBM's)

Motion for Summary Judgment,[2] Plaintiff's Response to Defendant's Motion for Summary

Judgment,[3] and Defendant's Reply in Support of Defendant's Motion for Summary Judgment.[4] For

the reasons cited below, Defendant's Motion for Summary Judgment is **GRANTED**.[5]

**BACKGROUND**

**A. Undisputed Material Facts**[6]

The instant case arises from the termination of Plaintiff George M. Roberts, an at-will

---

[1]Page number citations in this Opinion and Order refer to the CM/ECF pagination.

[2]Docket No. 42.

[3]Docket No. 56.

[4]Docket No. 64.

[5]Docket No. 42.

[6]The following facts are either not specifically controverted by Plaintiff in accordance
with Local Civil Rule 56.1(c) or are described in the light most favorable to Plaintiff as the non-
moving party.

1

employee, from Defendant IBM's Global Business Services Unit.[7] Plaintiff was an application developer, responsible for developing and maintaining software applications for IBM client Williams Companies, Inc. (Williams).[8] Plaintiff's main responsibility was a records management application for Williams called "OmniRim," which required Plaintiff to both maintain the OmniRim application and resolve customer problems as they arose.[9] Plaintiff was also responsible for performing similar support work for other smaller applications.[10]

Plaintiff was made aware of customer problems through the use of "remedy tickets."[11] When a customer encountered a problem with the OmniRim application, a remedy ticket describing the issue would be electronically generated and delivered electronically to Plaintiff.[12] Plaintiff was then responsible for responding to the remedy ticket within a certain period of time, either fixing the problem himself or engaging other team members.[13] All employees, including Plaintiff, were responsible for updating the status of open remedy tickets at least once a week.[14]

In June 2008, Debra Dobson-Morrison became Defendant IBM's Delivery Manager of the

---

[7]Motion at 7, Docket No. 42.

[8]*Id.*

[9]*Id.* at 8.

[10]*Id.*

[11]*Id.*

[12]*Id.*

[13]*Id.*

[14]*Id.*

Williams account as well as Plaintiff's manager.[15] On or about June 19, 2008, Williams employee Debbie Stubblefield met with Dobson-Morrison to discuss IBM's work on the Williams account.[16] Williams was concerned about the amount of time it was taking to complete remedy tickets for the OmniRim application.[17] At that time, Plaintiff was the only IBM employee supporting the OmniRim application for Williams.[18] Dobson-Morrison's contemporaneous notes from the meeting indicate complaints from Williams that Plaintiff in particular did not understand the scope or issue with the API application and a general complaint about OmniRim remedy tickets not being updated weekly as required and having long resolution times.[19]

Dobson-Morrison's confidential notes reflect an October 15, 2008 meeting with Ms. Stubblefield, at which they again discussed Williams' concerns with Plaintiff's work and the backlog of remedy tickets.[20] These notes further reflect that the OmniRim application had 9-10 remedy tickets that had not been updated and that Ms. Stubblefield specifically requested Plaintiff no longer be the direct contact for the applications he supported for Williams.[21] At this time, Dobson-Morrison named Kathy Gillespie the team lead for the OmniRim application and asked her

---

[15]*Id.*

[16]*Id.*

[17]*See* Reply at 6, Docket No. 64.

[18]*Id.*

[19]*Id.* at 7.

[20]Notes at 2, Docket No. 42-3.

[21]Affidavit at 3, Docket No. 42-1.

to oversee Plaintiff's work.[22] Dobson-Morrison also informed human resources supervisor William A. Steele of her concerns regarding Plaintiff's job performance.[23]

On Plaintiff's 2008 year-end Employee Performance Feedback Form, Dobson-Morrison noted client complaints and also noted Plaintiff's lack of collaboration teamwork and Plaintiff's difficulties in following through and setting priorities.[24] The Form also states that Plaintiff refused to train a back-up employee and notes that this is likely because Plaintiff believed that a lack of a back-up provided him job security.[25] Based on the job performance issues cited, Plaintiff received a 2008 year-end performance based review rating of "PBC 3," signifying he was among the lowest contributors compared to his peers supporting the Williams account and that his performance required improvement.[26] Plaintiff made no comments and offered no disagreement regarding the poor performance review in the space provided for comments.[27]

Around February or March of 2009, Plaintiff was selected as part of a resource action named "Project Blue."[28] Resource actions are similar to reductions in force and seek to identify skill sets or practice areas for which there is an overabundance of "resources" or employees.[29] Although

---

[22]*Id.*

[23]*Id.* at 4.

[24]*Id.* at 17.

[25]*Id.*

[26]2008 PBC at 4, Docket 42-8.

[27]*Id.* at 5.

[28]Response at 15, Docket No. 56.

[29]*Id.*

performance does not factor into what skill areas are selected for a resource action, performance may be a factor in selecting the individuals who will be subject to termination as a result of the resource action.[30] Plaintiff was ultimately not terminated as a result of his inclusion in "Project Blue."[31]

In March of 2009, Dobson-Morrison and Steele met with Plaintiff to discuss his 2008 performance review and informed Plaintiff that although they had seen some improvement in his job performance, they would need to see further and sustained improvement to consider his performance satisfactory.[32] Plaintiff's performance was again formally evaluated on the 2009 Mid-Year Employee Performance Feedback Form prepared by Dobson-Morrison.[33] This review states that Plaintiff lacked strong time-management skills and required significant guidance.[34] The Form further notes that Plaintiff's, as well as other team members', client communications sometimes lacked professionalism and were not always clear and concise.[35] The form also noted that Plaintiff in particular had failed to provide requested information and failed to answer direct questions.[36]

The 2009 Mid-Year Form also details a problem concerning client Williams sending "false complimentary notes" to Plaintiff in an effort to motivate him through positive reinforcement.[37]

---

[30]Reply at 16, n.17, Docket No. 64.

[31]*Id.* at 19.

[32]Declaration of Debra Dobson-Morrison at 4, Docket No. 42-1.

[33]*Id.*

[34]2009 Mid-year Review at 20, Docket No. 42-1.

[35]*Id.*

[36]*Id.*

[37]*Id.*

Plaintiff cites these complimentary notes, referred to as "kudos," in an effort to demonstrate that Williams was not complaining about Plaintiff's work.[38] However, the affidavit of Williams employee Ryan Zilm, who sent the "kudos" to Plaintiff, indicates (1) that Zilm found Plaintiff's technical skills marginal; (2) that Plaintiff took longer to complete tasks and projects than was necessary; (3) that the "kudos" in question were simple thank-you notes sent when Plaintiff completed tasks "relatively quickly;" and (4) that the notes were sent in an effort to motivate Plaintiff and did not reflect Zilm's overall satisfaction with Plaintiff's performance.[39]

On July 23, 2009, based on the continuing poor performance reviews, Plaintiff was offered the option to accept either an Individual Separation Allowance Plan (ISAP), under which Plaintiff could voluntarily resign and receive a severance package, or be placed on a 60-day Performance Improvement Plan (PIP).[40] On August 12, 2009, Plaintiff indicated via email that he did not wish to accept the ISAP.[41] In response, Plaintiff was informed by Steele should Plaintiff choose to be placed on the PIP, failure to successfully complete the PIP could result in Plaintiff's termination without any form of severance.[42] It was shortly after this email, on August 14, 2009, that Plaintiff filed his first OHRC charge, alleging that Defendant's discipline of Plaintiff was the result of age discrimination.[43]

---

[38]Response at 10, Docket No. 56.

[39]Affidavit of Ryan Zilm at 2-3, Docket No. 64-3.

[40]Motion at 13, Docket No. 42.

[41]Email at 2, Docket No. 42-12.

[42]*Id.*

[43]08/14/09 EEOC Charge of Discrimination at 2-3, Docket No. 18-4.

On September 2, 2009 Plaintiff was placed on the PIP, under which Plaintiff had weekly meetings with Steele and Dobson-Morrison to discuss his performance.[44] Plaintiff completed the PIP on or about November 2, 2009, at which time Plaintiff was advised that he needed to show sustained improvement or his employment could be terminated.[45] Concerns about the quality of Plaintiff's work and communications with clients began again shortly after his completion of the PIP.[46] On January 27, 2010, Plaintiff was terminated for unsatisfactory job performance. Subsequent to his termination, Plaintiff's position was initially "backfilled" by 28 year old Manpreet Duggal.[47] Shortly thereafter Duggal's workload was absorbed by two employees, Susan Wright and Kathy Gillespie.[48]

## B. Relevant Procedural History

On August 14, 2009, after refusing the ISAP, Plaintiff filed his first OHRC Charge alleging age discrimination and retaliation.[49] On February, 8, 2010, subsequent to his January 27, 2010 termination, Plaintiff filed an EEOC Intake Questionnaire alleging he was terminated in direct

---

[44]Performance Improvement Plan at 2, Docket No. 14; Deposition of William Steele at 20, 67:3-12.

[45]Declaration of Debra Dobson-Morrison at 4, Docket No. 42-1.

[46]*See* 2009 Year End Employee Performance Input Form at 2-3, Docket No. 42-16; Emails at Docket No. 42-15.

[47]Response at 13, Docket No. 13.

[48]*Id.*

[49]08/14/09 EEOC Charge of Discrimination at 2-3, Docket No. 18-4. The EEOC and OHRC have a work-sharing agreement which allows the agencies to share, or "dual file," discrimination complaints regarding discriminatory actions which fall under both federal and Oklahoma laws. *See Smith v. Oral Roberts Evangelical Assoc., Inc.*, 731 F.2d 684, 686 (10th Cir. 1984) (referring to the work sharing agreement between the EEOC and OHRC). Therefore, filing a charge or complaint with one agency effectively creates a partner filing with the other agency. For accuracy, the Court uses the agency listed on the documents cited.

retaliation for the August 14, 2009 Charge.[50] Plaintiff signed a formal OHRC Charge based on the allegation in this Questionnaire on August 31, 2010.[51]

Plaintiff received an EEOC Right to Sue Letter for the first OHRC Charge on September 30, 2010.[52] On December 21, 2010, within the 90 days provided in the Right to Sue Letter, Plaintiff filed suit in Tulsa County District Court alleging four causes of action: (1) Discrimination Based on Age contrary to Oklahoma's anti-discrimination statute and pursuant to the *Burk* public policy tort; (2) Discrimination Based on Age pursuant to the ADEA; (3) Retaliation for reporting age-based discrimination (whistleblowing) contrary to Oklahoma's anti-discrimination statute and pursuant to the *Burk* public policy tort; and (4) Retaliation in Violation of Title VII.[53]

Defendant removed the case to this Court on January 18, 2011 pursuant to this Court's original jurisdiction over Plaintiff's ADEA claim under 28 U.S.C. §1331 and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367.[54] On February 8, 2010 Defendant filed a Partial Motion to Dismiss Plaintiff's First, Third, and Fourth claims for relief, claiming that Plaintiff had (1) failed to timely file a complaint of discrimination with the OHRC with regard to his first and third claims, (2) that Plaintiff had not based his *Burk* discrimination claim on his termination as is required under *Burk* and its progeny, and (3) that Plaintiff failed to exhaust his

---

[50]02/8/10 OHRC Intake Questionnaire at 5, ¶10, Docket No. 18-1.

[51]08/31/10 OHRC Charge of Discrimination at 11, Docket 18-1.

[52]09/30/10 EEOC Right to Sue Letter at 1-2, Docket No. 18-5.

[53]Petition at 3-5, Docket No. 2-1.

[54]Notice of Removal at 1, Docket No. 2.

administrative remedies with regard to his Title VII claim.[55] On February 17, 2011, Plaintiff received an EEOC Right to Sue Letter for his second Charge of Discrimination related to retaliation.[56]

On September 20, 2011 this court issued an Opinion and Order finding that Plaintiff's filings with the OHRC were timely with regard to his First and Third claims, that Plaintiff had sufficiently pled termination based on discrimination to sustain his First claim, and that Plaintiff's Title VII claim should be dismissed as the parties agreed that Plaintiff had failed to exhaust administrative remedies with regard to any possible claim under Title VII.[57] In his Response to Defendant's Motion to Dismiss, Plaintiff stated that the inclusion of a Title VII claim as Plaintiff's Fourth cause of action was a typographical error.[58] Plaintiff represented to the Court that he had intended to include an ADEA retaliation claim and requested leave to amend his Petition to include such as claim.[59] The Court granted Plaintiff leave to amend his petition before September 30, 2011, but Plaintiff failed to amend his Petition.[60] Consequently, Plaintiff has waived any claim for retaliation pursuant to the ADEA.

Defendant's Motion for Summary Judgment was filed on June 14, 2012.[61] In addition to responding to Defendant's Motion, Plaintiff also requested, that the Court delay its ruling on

---

[55] *See* Motion for Partial Dismissal at 1, Docket No. 14.

[56] 02/17/11 Right to Sue Letter at 1-2, Docket No. 18-6.

[57] Opinion and Order at 6-7, Docket No. 32.

[58] *Id.* at 7.

[59] *Id.*

[60] *Id.* at 8.

[61] Motion at 1, Docket No. 42.

Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(d), pending the Court's ruling on Plaintiff's outstanding Motion to Compel.[62] In his Motion to Compel, Plaintiff sought to compel production of documents listed in a privilege log produced by Defendant after the close of discovery.[63] Plaintiff asserted through an appropriate Rule 56(d) affidavit that the documents requested likely contain facts essential to the opposition of summary judgment.[64] Subsequent to a hearing on the issue, this Court reviewed a broad sampling of the documents sought by Plaintiff to ensure that no relevant, non-privileged documents had been withheld.

On August 24, 2012, the Court found that through his dilatory conduct, Plaintiff had waived objection to Defendant's discovery responses.[65] The Court further found no evidence that privilege or work-product protection had been claimed improperly or that relevant, non-privileged documents had been withheld.[66] As Plaintiff's Motion to Compel was without merit, his motion pursuant to Rule 56(d) is unfounded, and properly **DENIED**. The Court looks to Defendant's Motion for Summary Judgment.

## DISCUSSION

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides the standard courts must use when determining whether summary judgment is proper. According to the rule, summary judgment

---

[62]Response at 28, Docket No. 56.

[63]*See* Order at 4, Docket No. 83.

[64]*See* Affidavit of Daniel Smolen at 1-2, Docket No. 56-13.

[65]*See* Order at 6, Docket No. 83.

[66]*Id.* at 7.

should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.[67] A material fact is one that is essential to disposition of a claim, and a genuine issue is present when the trier of fact could resolve it in favor of either party.[68] If conflicting inferences can be drawn from the evidence, summary judgment is improper.[69]

When determining issues of law in a diversity action, this Court has an obligation to apply Oklahoma law as announced by the highest court of the state.[70] In the absence of an authoritative pronouncement, federal courts, sitting in diversity, must predict how Oklahoma's highest court would rule, following "any intermediate state court decision unless other authority convinces [this Court] that the state supreme court would decide otherwise."[71]

## B. Plaintiff's Claim Under the ADEA

Under the ADEA, it is "unlawful for an employer ... to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[72] "[T]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that

---

[67]*See* Fed. R. Civ. P. 56(a),(c).

[68]*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[69]*Nat'l Football Scouting, Inc. v. Const. Assur. Co.*, 931 F.2d 646 (10th Cir. 1991).

[70]*Comm'r v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967).

[71]*Daitom, Inc. v. Pennwalt Corp*., 741 F.2d 1569, 1574 (10th Cir.1984).

[72]29 U.S.C. § 623(a).

age was the 'reason' that the employer decided to act."[73] In other words, we must determine whether age was a "but-for" cause, i.e., "the factor that made a difference."[74] Here Plaintiff's termination is the adverse employment action complained of, therefore to succeed on his claim under the ADEA, the Plaintiff must ultimately prove, by a preponderance of the evidence, which may be direct or circumstantial, that age was the "but-for" cause of his termination.[75]

Looking to Plaintiff's ADEA claim for discriminatory termination, the Court notes from the outset that the manner of Plaintiff's pleading actually undercuts to some degree any inference of "but-for" causation. In also pleading *Burk* torts for both termination based on retaliation and termination based on age discrimination, Plaintiff tacitly admits that Defendant had a mixed motive for Plaintiff's termination. This admission weakens, but does not necessarily defeat Plaintiff's necessary contention that but for his age, Plaintiff would not have been terminated. It is possible that Plaintiff may still show that, despite admitting that various factors may have informed Defendant's decision to terminate, Plaintiff's advanced age was the ultimate decider.[76]

1. Direct Evidence

The Court first looks for any direct evidence that but for Plaintiff's age, he would not have been terminated. Direct evidence is evidence that, on its face, demonstrates that an adverse employment decision was reached for discriminatory reasons.[77] Plaintiff offers a February or March

---

[73]*Gross v. FBL Fin. Servs., Inc*., 557 U.S. 167, 178, 129 S.Ct. 2343, 2350, 174 L.Ed.2d 119 (2009).

[74]*Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir.2010).

[75] *Gross.* 557 US at 178.

[76]*Jones v. Okla. City Pub. Sch.*, 617 F.3d 1273, 1277 (10th Cir.2010).

[77]*Riggs*, 497 F.3d at 118.

2009 instant message (IM) exchange between IBM managers William Steele and Joe Divielbiss that purports to show that Plaintiff's termination was predetermined and that Plaintiff's advanced age was the real reason for the decision to terminate. The IMs in question are discussing Plaintiff's continued inclusion in the "Project Blue" resource action.

Plaintiff takes issue with several statements in the IM string which he feels demonstrate direct evidence of age discrimination. The first is Divelbiss' stating "[d]o we have an appetite to remove him?"[78] This statement was not made in reference to removing Plaintiff from his job, *i.e.* termination, but rather it referred to removing Plaintiff from "Project Blue." Furthermore, this statement in no way facially demonstrates age discrimination.

Plaintiff also cites Divelbiss' use of the term "shelf life" in reference to Plaintiff, claiming it is a reference to Plaintiff's age. However, it is clear from the context of the IM discussion that this was not a reference to Plaintiff's age, but a reference to the amount of billable work Plaintiff had remaining with client Williams.[79] The amount of billable work remaining was an important consideration in this instance because if removed via the resource action, Plaintiff's position could not be backfilled. If Plaintiff was removed as part of the resource action, his workload would have to be assumed by existing employees. While this evidence may support other inferences with regard to Defendant's intentions with respect to the Plaintiff, read in context the phrase "what is his shelf life?" offers no direct evidence of age discrimination.

Plaintiff also asserts that the name of the resource action itself , "Project Blue," is a veiled

---

[78]*See* Response at 22, Docket No. 56 (*citing* Instant Messages at 2, Docket No. 56-5*)*.

[79]*See* Instant Messages at 2, Docket No. 56-5 ("What is his shelf life; how long will he have work at williams[sic], and how reployable?")

reference to "blue hair," *i.e.*, the elderly, and thus is direct evidence that IBM had implemented a policy to terminate its older employees.[80] In support, Plaintiff offers the deposition testimony of Steele, in which Steele concedes to Plaintiff's counsel that he had in fact heard the term "blue hair" used to reference older people.[81] Plaintiff disingenuously attempts to insinuate that Steele's knowledge of a commonly used colloquialism, "blue hair," is an acknowledgment that this was the basis for the name of the resource action "Project Blue," and thus a tacit admission of age discrimination. Plaintiff fails to offer any further support for this contention, leaving the Court with only a tenuous inference that "Project Blue" is a reference to "blue hair." Evidence supporting a tenuous inference does not constitute direct evidence of discrimination. In fact it is equally likely that "Project Blue" is a reference to Defendant IBM's common nickname "Big Blue."

Even accepting, solely for the sake of argument, Plaintiff's characterization that these IMs evidence that Plaintiff's termination was predetermined, the IMs make no mention, either directly or impliedly, of Plaintiff's age. The IMs are therefore not credible, direct evidence that Plaintiff's termination was based upon Plaintiff's age rather than deficient performance. With no direct evidence of discrimination, Plaintiff must rely on circumstantial evidence to meet his burden.

## 2. Circumstantial Evidence

In evaluating whether Plaintiff's proffered circumstantial evidence creates a dispute of material fact, the Court uses the three-step framework outlined in *McDonnell Douglas Corp. v. Green*.[82] Under this framework, Plaintiff must initially establish a *prima facie* case of

---

[80] *See* Response at 15, 25, n.4, Docket No. 56.

[81] *See id.* at 15.

[82] 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Jones*, 617 F.3d at 1278–79.

discrimination.[83] If Plaintiff can present a *prima facie* case, Defendant then bears the burden of producing a legitimate non-discriminatory reason for any adverse employment action, in this case Plaintiff's termination.[84] Should Defendant carry this burden, Plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by Defendant were not its true reasons, but were a pretext for discrimination and that age truly was the deciding factor.[85] Throughout the three-step process, Plaintiff carries the full burden of persuasion to show that age was the factor that tipped the scales in favor of terminating him.[86]

*a.* Prima Facie *Case*

The Court looks first to whether Plaintiff can establish a *prima facie* case for discrimination under the ADEA. Due to the wide range of forms discrimination can take in the employment context, the precise elements of a *prima facie* case vary from one setting to the next.[87] The parties in this case disagree over the elements of a *prima facie* case.[88] After reviewing the relevant law, the Court finds that to establish a *prima facie* case, Plaintiff must offer evidence that permits a reasonable inference that Plaintiff was "(1) within the [ADEA's] protected class of individuals 40 or older; (2) performing satisfactory work; (3) terminated from employment; and (4) replaced by a

---

[83]*McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

[84]*Id.*

[85]*See McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817.

[86]*See Jones*, 617 F.3d at 1278 (*citing Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125 (10th Cir.2005)).

[87]*Bittel v. Pfizer*, Inc., 307 Fed.Appx. 132, 137 (10th Cir 2009).

[88]Response at 24. Docket No. 56 ("IBM utilizes the incorrect *prima facie* case, as this is an age discrimination discharge claim").

younger person, although not necessarily one less than 40 years of age."[89] "In the absence of facts tending to establish this initial inference, plaintiff is not entitled to the presumption of discrimination and a defendant is not required to defend against the charge."[90]

It is undisputed that Plaintiff falls within the class of persons protected by the ADEA, thus he meets the first prong of the *prima facie* analysis. As to the second prong, "performing satisfactory work," Plaintiff need not defeat Defendant's contention that his work was unsatisfactory to meet this standard.[91] Plaintiff need only (1) offer credible evidence that he continued to possess the objective qualifications he held when he was hired, or (2) offer his own testimony that his work was satisfactory, even when disputed by his employer, or (3) offer evidence that he had held his position for a significant period of time.[92] Through his testimony alone, Plaintiff meets this standard.

It is further undisputed that Plaintiff was terminated, and Plaintiff offers credible evidence that his position was, at least temporarily, backfilled by 28 year old Manpreet Duggal.[93] As such, Plaintiff meets the third and fourth prongs of the *prima facie* analysis. Based on the evidence offered, Plaintiff easily meets the minimal burden necessary to establish a *prima facie* case under

---

[89]*Adamson v. Multi Community Diversified Services, Inc*., 514 F.3d 1136, 1146 (10thCir.2008). *See also Bittel v. Pfizer*, Inc., 307 Fed.Appx. 132, 137 (10th Cir 2009) (*citing Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1181 (10th Cir.2002)). *See also Jones v. Okla. City Pub. Sch.,* 617 F.3d 1273, 1279 (10th Cir.2010) (concluding that McDonnell Douglas applies to ADEA claims).

[90]*Id.*

[91]*MacDonald v. Eastern Wyoming Mental Health Center*, 941 F.2d 1115, 1121 (10thCir.1991) (*overruled on other grounds by Randle v. City of Aurora*, 69 F.3d 441, 452 (10th Cir.1995)).

[92]*Id.*

[93]Response at 24, Docket No. 56.

the *McDonnell Douglas* framework.

*b. Burden of Production*

As the Plaintiff has established a *prima facie* case, Defendant bears a "burden of production" to articulate some legitimate, nondiscriminatory reason for its action.[94] Defendant does so. Defendant offers that Plaintiff was terminated solely because of continuing job performance issues. To demonstrate these performance issues, Defendant specifically cites (1) Plaintiff's "PCB 3" rating on his 2008 review, (2) Plaintiff's unsatisfactory 2009 mid-year review, (3) Plaintiff's 2009 placement on the PIP, and (4) Plaintiff's unsatisfactory performance after completing the PIP, as the job performance issues precipitating Plaintiff's January 2010 termination.[95] This evidence supports Defendant's reasoning and suffices to meet Defendant's burden of production.

*c. Pretext*

As Defendant has given a non-discriminatory reason for Plaintiff's termination, it is Plaintiff's burden to offer evidence supporting a reasonable inference that the legitimate reason offered by Defendant was not its true reason, but was a pretext for discrimination and that age truly was the deciding factor.[96] To demonstrate material questions of fact as to pretext an employee must offer evidence that indicates all of the employer's proffered reasons were "so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief."[97]

Plaintiff first attempts to demonstrate pretext by citing the IM string that he also claims

---

[94]*Jones*, 617 F.3d at 1278.

[95]Motion at 21, Docket No. 42.

[96]*See McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817.

[97]*See Piercy v. Maketa*, 480 F.3d 1192, 1201-02 (10thCir.2007) (applying pretext analysis to multiple reasons for termination).

constitutes direct evidence of age discrimination.[98] Plaintiff alleges this evidence demonstrates his termination was predetermined and that this predetermination contradicts Defendant's contention that Plaintiff was terminated for performance issues occurring after the IMs in question.[99]   On its face, the IM conversation in question does not indicate that Plaintiff's termination was predetermined, but rather that Plaintiff's performance was ongoing concern for his managers.[100] Although Plaintiff  "adamantly disputes" he had any performance issues, the record clearly evidences the performance concerns of multiple managers at IBM as well as the complaints of the client, Williams, a disinterested third party.[101] The third-party complaints are not directed at IBM as a whole, as alleged by the Plaintiff, but  are specifically targeted at Plaintiff based on the work he was doing for the client, Williams.[102]

The messages cited do support a rational inference that management wanted to remove Plaintiff from the "Project Blue" resource action, thus continuing Plaintiff's employment.[103] The IMs may support some inference that Defendant ultimately wanted to terminate Plaintiff, and wanted him out of the resource action so that Plaintiff's position could be backfilled to account for continuing

---

[98]Response at 25, Docket No. 56.

[99]*Id.* at 27.

[100]*See* Instant Messages at 2, Docket No. 56-5 ("If performance continues to decline we should manage out through ISAP").

[101]*See, e.g.* Notes at 2, Docket No. 42-3 (noting backlog of remedy tickets); Affidavit of Ryan Zilm at 2-3, Docket No. 64-3.

[102]*See* Affidavit of Ryan Zilm at 2-3, Docket No. 64-3.

[103]*See* Instant Messages at 2, Docket No. 56-5 ( "[D]o we have an appetite to remove him?" "I would like to remove him from the RA then").

workload.[104] However, nothing in this IM string supports any inference that Plaintiff's age was a motivating factor in these decisions. If anything, these IMs only reinforce Defendant's contention that Plaintiff's ongoing performance issues were the impetus for his termination.[105] As such, the IMs in question offer no credible evidence of contradictory intent or that Plaintiff's discipline was pretext for age discrimination.

Plaintiff also argues that the timing of his termination evidences that the performance issues cited by Defendant were pretext. In support, Plaintiff notes that his termination date under "Project Blue" would have been July 27, 2009, and the date he was offered the ISAP was July 23, 2009.[106] Plaintiff contends Defendant wanted him removed from "Project Blue" because his inclusion would cause the project to have a disparate impact on those over 40 in violation of the ADEA.[107] Plaintiff characterizes the IM string as an attempt by managers to formulate a way to terminate Plaintiff based on his age without raising that ADEA red flag.[108]

Again, although a favorable reading of the IM string may indicate that managers wanted to terminate Plaintiff in a manner that best fit Defendant's business needs, it offers no indication they wanted to do so based upon Plaintiff's age. On the contrary, the IM string evidences that Plaintiff's performance was the concern. One cannot reasonably infer from this evidence that the cause for

---

[104]*See id.* (Discussing Plaintiff's workload; "[W]e could manage out through ISAP at mid-year, which would allow you to backfill").

[105]*See id.* ("[H]ow's performance?"; "[I]f performance continues to decline we should manage out through ISAP").

[106]Response at 16, Docket No. 56.

[107]*Id.* at 27.

[108]*Id.* at 27-28

Plaintiff's termination was for anything other than Plaintiff's poor performance. As such, it is not credible evidence that the performance issues alleged were pretext for any age discrimination.

In his further efforts to demonstrate pretext, Plaintiff cites a lack of disciplinary action taken against co-workers, which he claims demonstrates disparate treatment.[109] However, in listing the parties who Plaintiff believes had not been commensurately disciplined, Plaintiff makes no effort to demonstrate that the under-disciplined parties listed were similarly situated, that is, Plaintiff fails to even fairly allege the named parties were in similar positions or engaged in a pattern of conduct of comparable seriousness to that of Plaintiff.[110] Without such a showing, Plaintiff can only offer an opinion as to how he "felt" and fails to offer competent evidence that would create a question of material fact as to the existence of disparate disciplinary practices.[111]

Finally, Plaintiff offers his own testimony that he observed unfair treatment of older employees who had begun disappearing from IBM.[112] However, Plaintiff makes no attempt to note the identity of these allegedly wronged employees or to present their testimony. Plaintiff's unsupported observations are not competent evidence of discrimination or pretext.

---

[109]*See id.* at 29 (citing multiple coworkers who had not received similar remediation).

[110]*Mackenzie v. Denver*, 414 F.3d 1266, 1277 (10th Cir. 2005) (holding "[i]ndividuals are considered "similarly-situated" when they (1) have dealt with the same supervisor; (2) were subjected to the same work standards; and (3) had engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it").

[111]Three of the parties cited by Plaintiff as receiving disparate treatment, Brig, Nitten, and Pradeep, reported to a different supervisor, and thus were not "similarly situated" to Plaintiff. *See* Reply at 18, n.20, Docket No. 64. Further, Plaintiff admits that he did not know the extent to which other employees were disciplined for performance problems. Deposition of George Roberts at 138:11-139:4, Docket No. 56-1.

[112]*See* Deposition of George Roberts at 22, 136:5-14; 25-26, 143:21-144:12, Docket No. 56-1.

Plaintiff fails to offer any credible evidence that might create a question of material fact as to whether Defendant's proffered reason for Plaintiff's termination constitutes pretext. Furthermore, Plaintiff offers no credible evidence supporting the contention that Plaintiff's age was even *a* motivating factor, let alone the butfor cause of Plaintiff's termination. Because Plaintiff can offer neither direct evidence showing age discrimination nor circumstantial evidence demonstrating pretext, Plaintiff's claim for discrimination under the ADEA must necessarily fail. Defendant is entitled to summary judgment on Plaintiff's second claim under the ADEA.

## C. Plaintiff's Claims Under Oklahoma's *Burk* Tort Framework

Plaintiff also brings two claims pursuant to Oklahoma's *Burk* tort framework, one for termination based on age discrimination and one for retaliation, claiming Plaintiff was terminated for complaining of age discrimination "contrary to Oklahoma's anti-discrimination statute and the *Burk* public policy tort."[113] The Oklahoma Supreme Court has held that claims based on termination for both age discrimination and retaliation are available under the *Burk* framework.[114]

Plaintiff's first *Burk* claim is easily resolved. Although, Oklahoma courts have not adopted the ADEA's "but-for" causation test for *Burk* torts based on age discrimination, for Plaintiff's *Burk* claims to survive summary judgment, he must show that age was a "significant factor" in his

_____

[113]*See* Petition at 3-4, Docket No. 2-1. Plaintiff's Petition alleges *both* retaliation and termination in violation of the OADA, but the *Burk* cause of action requires discharge in violation of public policy. *See Reynolds v. Advance Alarms*, 2009 OK 97, ¶7, 232 P.3d 907, 909. As such, the only retaliatory conduct at issue in the *Burk* context is Plaintiff's termination.

[114]*See Burk v. K-Mart Corp.*, 1989 OK ¶19; 770 P.2d 24, 29 ("Accordingly, we believe the circumstances which present an actionable tort claim under Oklahoma law is where an employee is discharged for refusing to act in violation of an established and well-defined public policy or for performing an act consistent with a clear and compelling public policy"); *Saint v. Data Exchange, Inc.*, 2006 OK 59, ¶6, 145 P.3d 1037, 1039 ("Therefore we find that there is a *Burk* tort remedy for those who allege employment age discrimination").

employer's decision.[115] The Court has previously found that Plaintiff has failed to offer competent evidence raising a material question of fact as to whether age was even a motivating factor, much less a significant motivating factor,  for Plaintiff's termination. Consequently, Plaintiff's *Burk* action for age discrimination must fail, and summary judgment for Defendant is appropriate on Plaintiff's first claim for relief under *Burk*.[116]

However, as the Plaintiff did not bring related federal claim for retaliation under the ADEA, the Court has not fully evaluated any evidence supporting Plaintiff's *Burk* claim for retaliation. The Court need not do so. The elements of an action under *Burk* are: "(1) an actual or constructive discharge (2) of an at-will employee (3) in significant part for a reason that violates an Oklahoma public policy goal (4) that is found in Oklahoma's constitutional, statutory, or decisional law or in a federal constitutional provision that prescribes a norm of conduct for Oklahoma and (5) no statutory remedy exists that is adequate to protect the Oklahoma policy goal."[117] The public policy underlying part four of the analysis must be clearly articulated by Oklahoma "constitutional, statutory or decisional law."[118] "[A] federal statute cannot serve as an articulation of Oklahoma public policy, absent a specific Oklahoma decision, statute or constitutional provision."[119]

---

[115]*Medlock v. United Parcel Serv., Inc.,* 608 F.3d 1185, 1194 n. 7 (10th Cir.2010); *Vasek v. Bd. of County Comm'rs of Noble County*, 2008 OK 35, ¶¶ 27–28, 186 P.3d 928, 932.

[116]*See Sanders v. Southwestern Bell Telephone*, L.P., 676 F.Supp.2d 1271, 1296 ("A plaintiff's *Burk* tort claim will succeed or fail for the same reason as the related federal claim") (*citing Melton v. Farmers Ins. Group*, 619 F.Supp.2d 1131, 1142 (W.D.Okla.2008); *Tatum v. Philip Morris Inc.*, No. 93-6018, 1993 WL 520983, at *3 (10th Cir. Dec. 14, 1993)).

[117] *Vasek v. Bd. of County Comm'rs of Noble County*, 2008 OK 35, ¶¶ 27–28, 186 P.3d 928, 932.

[118]*Id.* at 28.

[119] *Griffin v. Mullinix*, 947 P.2d 177, 179 (Okla.1997).

Here it is uncontested that there was an actual discharge of an at-will employee, meeting the first two prongs of the *Burk* analysis. Further, the parties set forth no significant argument regarding Oklahoma's public policy against retaliation, thus conceding the third and fourth prongs of the analysis. As for the fifth prong, Defendant tacitly asks this Court to consider, yet set aside, the issue of whether the ADEA provides an adequate remedy for Plaintiff's *Burk* claims, in favor of finding that the OADA now provides a complete remedy for any form of alleged discrimination.[120]

Contrary to Defendant's assertion, the OADA does not provide a complete remedy for Plaintiff's *Burk* causes of action. This Court has repeatedly found that the OADA amendment cited by Defendant does not apply retroactively. As Plaintiff's *Burk* causes of action accrued well before the November 11, 2011 OADA amendment, Plaintiff's *Burk* claims are not resolved by Oklahoma's abolition of the *Burk* tort.[121] However, the adequacy prong of the *Burk* analysis remains a significant issue in this case with respect to Plaintiff's claim for retaliatory discharge.

The Oklahoma Supreme Court has frequently distinguished in its opinions between a discriminatory discharge based on an employee's status, like Plaintiff's first claim, and a retaliatory discharged based on an employee's conduct, *i.e.*, whistleblowing, like Plaintiff's third claim.[122] In cases of wrongful termination involving status-based discrimination, the Oklahoma Supreme Court has formally abandoned the "adequacy of remedies" test in favor of an inquiry as to whether the

---

[120]Motion at 26, Docket No. 42.

[121]*See Mazzanti v. City of Owasso*, 2012 WL 2505504, *2 (N.D.Okla June 28, 2012); *Jenkins v. Legend Senior Living, LLC*, 2012 WL 1865394, *7, n.5, (N.D.Okla.,May 21, 2012).

[122]*See Bennett v. Head Country Food Products, Inc*., 2008 WL 3095847, *3 (W.D.Okla. Aug. 04, 2008) (noting distinction between status and conduct based discrimination).

similar federal law provides the "same" remedy as the *Burk* cause of action.[123]

However, this "same remedy" rule was explicitly limited to resolving the disparate treatment of victims of *status-based* discrimination.[124] The Oklahoma court has specifically stated that it does not apply to instances in which a plaintiff's conduct, like whistleblowing, is alleged to have triggered a discharge as in Plaintiff's third claim for relief.[125] Rather, the question of "adequate, alternate remedies" for whistleblowers continues to be decided by a court determination of whether the proposed alternate remedy is sufficient to protect both the Plaintiff and the identified public policy goals of Oklahoma.[126] Consequently, although both the Oklahoma Supreme Court and the Tenth Circuit have recognized that a *Burk* claim is available for status-based age discrimination despite the existence of a federal statutory remedy under the ADEA;[127] it remains an open question whether Plaintiff's third cause of action, a conduct-based *Burk* claim of retaliation, remains tenable despite the availability of remedies under the ADEA.

On this question, the Court finds that a *Burk* retaliation claim is unavailable to Plaintiff

---

[123] *Smith v. Pioneer Masonry, Inc*. 2009 OK 82, ¶5, 226 P.3d 687, 688 (*citing Shephard v. CompSource Oklahoma*, 2009 OK 25, ¶ 11, 209 P.3d 288, 292–93).

[124] *Shephard v. CompSource Oklahoma*, 2009 OK 25, ¶10, 209 P.3d 288, 292 ("This Court made it clear, however, that the commensurate remedy rule was limited to resolving the disparate treatment of victims of status based discrimination").

[125] *Id.* ("This Court specially noted that it did not apply to cases in which a plaintiff's conduct, like whistleblowing, is alleged to have triggered a discharge").

[126] *Id.* ("While *Shirazi* clearly abandons the adequacy of the remedies test in cases of wrongful termination involving status based discrimination, it does not depart from *Kruchowski*'s recognition of the test in *Vasek*: "Were the remedies available to the plaintiff sufficient to protect Oklahoma's public policy goals?") (*citing Kruchowski*, 2008 OK 105, ¶ 25, 202 P.3d at 152).

[127] *Medlock v. United Parcel Service, Inc*. 608 F.3d 1185, 1188, n.1 (10thCir.2010) (*citing Kruchowski v. Weyerhaeuser Co.*, 2008 OK 202, ¶23, P.3d 144, 145-46, 151; *Saint v. Data Exch., Inc*., 2006 OK 59, ¶6 145 P.3d 1037, 1039).

because a sufficient, alternate remedy exists under the ADEA. The Court notes that "[w]hile a federal statute cannot by itself serve as a statement of Oklahoma policy, a federal statutory remedy may be as effective as an Oklahoma statutory remedy in dissuading employers from discharging employees for reasons that violate Oklahoma public policy."[128] The ADEA accomplishes this goal, providing that:

> [i]t shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter.[129]

Further, the ADEA provides that its provisions "shall be enforced in accordance with the powers, remedies, and procedures provided in sections 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section."[130] Section 216(b) in turn, provides that:

> [a]ny employer who violates the provisions of section [623] of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section [623] of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.[131]

Although Plaintiff has failed to pursue a retaliation claim under the ADEA, the ADEA's suit

---

[128] *Vasek*, 2008 OK 35, ¶13, 186 P.3d at 931 (*internal quotation omitted*).

[129] 29 U.S.C. §623(d).

[130] 29 U.S.C. §626(b).

[131] 29 U.S.C. §216(b) (*declared unconstitutional on other grounds by Alden v. Maine*, 527 U.S. 706, 712 (1999)). Section 626 goes on to state that "liquidated damages shall be payable only in cases of willful violations of this chapter." *See* 29 U.S.C. §626(b).

and damages provisions are specifically tailored to provide an adequate remedy for the exact type of retaliatory conduct complained of by this Plaintiff. This remedy includes both actual and liquidated damages and is sufficient to protect both the rights of Plaintiff and Oklahoma's public policy against employer retaliation for employee reporting of age-based discrimination. Although the ADEA does not necessarily provide the *same* remedies that would be available under the *Burk* framework, it need not do so to be an *adequate* substitute. Consequently, the availability of alternate remedies under the ADEA obviates any claim for retaliation under *Burk* for this Plaintiff, and summary judgment is appropriately granted in favor of the Defendant on Plaintiff's third claim for relief.

## C. Plaintiff's IIED "Claim"

Plaintiff dedicates nearly two pages of his Response to argument supporting a claim for Intentional Infliction of Emotional Distress (IIED).[132] The Court has reviewed Plaintiff's Petition thoroughly and finds that Plaintiff has not directly pled any claim for IIED. Further, although Plaintiff lists "emotional distress" as a component of damages related to his *Burk* retaliation claim,[133] none of the conduct alleged in this case rises to the level of "outrageousness" required to support an IIED claim under Oklahoma law.[134] The Court notes that the Pre-Trial Order in this case does not list, or even address, an IIED claim as one of the issues to be resolved, but insofar as

---

[132]*See* Response at 31-32, Docket No. 56.

[133]Petition at 5, Docket No. 2-1.

[134]*See Trentadue v. United States*, 397 F.3d 840, 856, n.7 (10th Cir. 2005)(*applying Oklahoma law*) (noting it is trial court's responsibility to initially determine whether defendant's conduct may reasonably be regarded as sufficiently extreme and outrageous). *See also Gabler v. Holder & Smith, Inc.,* 2000 OK CIV APP 107, ¶64, 11 P.3d 1269, 1280 (noting that employment related facts rarely rise to a level of extreme and outrageous conduct).

Plaintiff seeks redress for IIED, the Court grants summary judgment on that issue to Defendant.

**CONCLUSION**

For the reasons cited above, Plaintiff's Motion pursuant to Federal Rule of Civil Procedure 56(d) is **DENIED**. Defendant's Motion for Summary Judgment is **GRANTED**.[135] A separate Judgment is filed herewith.

**IT IS SO ORDERED, this 13th Day of September, 2012.**

James H. Payne
United States District Judge
Northern District of Oklahoma

---

[135]Docket No. 42.